SOUTHERN ELECTRICAL SERVICES, INC. as Assignee of the Morganti Group, Inc., Appellant,

v.

The CITY OF HOUSTON, Appellee.

No. 01–10–00649–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 18, 2011.

Anthony T. Gotz, Diane M. Guariglia, Marc A. Young, Cokinos, Bosien & Young, Houston, TX, for Appellant.

Malinda York Crouch, Sr. Assistant City Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and BLAND.*

## OPINION ON MOTION FOR REHEARING

JANE BLAND, Justice.

In this government contract dispute, Southern Electrical Services, as assignee of the Morganti Group, Inc., (SES) sued the City of Houston for breach of contract and violation of the Prompt Payment Act. The trial court granted summary judgment in favor of the City. SES appeals, contending that the trial court erred in granting the City's summary judgment motion because: (1) a genuine issue of material fact exists as to whether the City is liable for breach of contract and interest owed under the Prompt Payment Act; (2) section 271.153 of the Texas Local Government Code does not bar SES's damages; and (3) the City failed to establish any of its affirmative defenses as a matter of law. On May 5, 2011, we issued an opinion affirming the judgment of the trial court. SES filed a motion for rehearing and a motion for en banc reconsideration. We grant the motion for rehearing, withdraw our opinion issued May 5, 2011, and issue this opinion in its stead. We overrule the motion for reconsideration en banc as moot.[1] Our disposition is unchanged.

## BACKGROUND

The City sought bids from companies to construct a new central concourse at the William P. Hobby Airport. Morganti bid to be a general contractor on the project. Morganti, in turn, requested bids from subcontractors to perform work on the

* Justice Alcala was a member of the original panel but has resigned in the interim. The two remaining justices ruled on this motion. See TEX.R.APP. P. 49.3(b).

1. See Brookshire Brothers, Inc. v. Smith, 176 S.W.3d 30, 33 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (op. on reh'g) (noting that motion for en banc reconsideration becomes moot when panel issues new opinion and judgment).

project, and SES, as a subcontractor, prepared its bid for its portion of the project based on a "prevailing wage rate" scale that the City provided to the bidders in its bid documents. Both under the contract and by statute, the City required its contractors and subcontractors on the project to pay their employees at or above the local prevailing wage rate.[2] *See* TEX. GOV'T CODE ANN. §§ 2258.001–.026 (West 2008). The City subsequently awarded SES and Morganti "lump sum" contracts to perform the work.

The contract between the City and Morganti provides in relevant part,

> 1.1 Contractor shall execute the Work in accordance with the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as otherwise provided herein.
>
> . . . .
>
> 3.1 Subject to the terms and conditions of the Contract Documents, City shall pay Contractor in current funds for Contractor's performance of the Contract, the Contract Price of [$77,039,-273.86].

Attached to and incorporated into the contract were additional "general conditions" and "supplementary conditions," which provide, in relevant part:

### 1.1 BASIC DEFINITIONS

. . . .

1.1.5 Contract: The Contract Documents form the Contract for Work. The Contract represents the entire and integrated agreement between parties and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. . . .

1.1.6 Contract Documents: The Agreement between the City and Contractor, the portions of the Contractor's Bid attached to the Agreement, and any post-bid documentation submitted prior to the execution when attached to the Agreement ... the Conditions of the Contract, ... appropriate addenda ... and other documents as they are specifically enumerated in the Agreement, plus Modifications.

1.1.12 Modification: A Modification to the Contract Documents, issued after the Effective Date of the Agreement, is a Change Order, a Work Change Directive, or a written order for a minor change in the Work issued by the City Engineer.

. . . .

### 1.2 EXECUTION, CORRELATION AND INTENT

. . . .

1.2.2 Execution of the contract by the Contractor is conclusive that the Contractor has carefully examined the Con-

---

**2.** Contractors are required to pay in accordance with the wage rates only if the government entity provides them, and the public body's determination of the general prevailing rate of per diem wages is final. *See* TEX. GOV'T CODE ANN. §§ 2258.022(e), 2258.023(c) (West 2008); *see also Tex. Hwy. Comm'n v. El Paso Bldg. & Constr. Trades Council*, 149 Tex. 457, 234 S.W.2d 857, 863 (1950) (interpreting predecessor prevailing wage rate statute and holding that determination of rate by highway commission was "final and not reviewable by the courts"); *City of Houston v. Houston Gulf Coast Bldg. &*

*Constr. Trades Council*, 710 S.W.2d 181, 184 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.) (holding that city's determination of prevailing wage rate was final and not subject to judicial review under predecessor statute). *But see Associated Gen. Contractors of Tex., Inc. v. City of El Paso*, 879 S.W.2d 318, 320 (Tex.App.-El Paso 1994, no writ) (holding that trial court had subject matter jurisdiction to determine whether city violated prevailing wage rate statute by failing to use one of two methods listed in statute to determine prevailing rate).

tract Documents, visited the site of the Work, become familiar with local conditions under which the Work is to be performed, and fully informed itself as to conditions under which the Work is to be performed, and fully informed itself as to conditions and matters which can affect the Work or costs thereof....

. . . .

### 3.6 PREVAILING WAGE RATES

3.6.1 Contractor shall comply with the governing statutes providing for labor classification of wage scales, as stipulated in Document 00800–Supplementary Conditions, for each craft or type of laborer, worker, or mechanic.

3.6.1.1 Prevailing wage rates applicable to the Work shall be as stated in the Agreement, and as bound by in the Project Manual.

3.6.1.2 The prevailing wage rates applicable to the Work shall be Document 00812–Wage Scale/Engineering/FAA, as bound in the Project Manual. Documents 00811 and 00813 shall not apply.

3.6.2 Each week the Contractor shall submit to the City Affirmative Action and Contract Compliance Division, certified copies of payrolls showing classification and wages paid by the Contractor and all Subcontractors for each employee working on the Project for any day included in the Contract.

. . . .

### 5.3 CONTRACTOR RESPONSIBILITY FOR SUBCONTRACTORS

. . . .

5.3.2 By written agreement, Contractor shall require each Subcontractor, to the extent of the work to be performed by the Subcontractor, to be bound to the Contractor by the terms of the Contract Documents....

Document 00812 is an addendum to the contract, showing a scale of wage rates to be paid to different types of employees. Document 00812 states that employers should use the wage rates as the minimum wage for their employees, and the rates do not prohibit payment of higher wages. SES's subcontract expressly incorporated the contract between the City and Morganti.

After SES entered into the subcontract, the City amended its minimum prevailing wage scales and certified the higher wage scales, reflected in Document 00813. The 00813 rates similarly do not prohibit a contractor's payment of higher wages to his employees. After a dispute arose about the switch, in a letter sent to Morganti, the City wrote that it would reimburse the Hobby Airport contractors and subcontractors for variances between the 00812 rate and the 00813 rate. In response to the letter, Morganti requested the difference between the rates on behalf of itself and its subcontractors, including SES. The City denied the claim. It took the position that the switch to the 00813 rate did not harm Morganti and SES because none of their employees received a wage increase due to the switch. SES's president admitted that SES did not change the rates it paid its employees on account of any communications from the City. SES timely completed its performance under the contract and received payment.

SES, as an assignee of Morganti, filed this breach-of-contract suit against the City, alleging that in providing incorrect wage scales in the contract documents, the City breached the contract.[3]  In its sev-

---

**3.** This is the third appeal of this case. Morganti initially was a party to this suit against the City and the first two appeals. In the first appeal, we reversed the trial court's order denying the City's plea to the jurisdiction and remanded the case in light of *Tooke v. City of*

enth amended petition, SES alleges that both the 00812 rate and the 00813 rate are incorrect wage scales. SES seeks the difference in the wages under the incorrectly certified wage scales provided in the documents and the correct prevailing wage scale plus prompt payment of interest. Both parties moved for summary judgment in the trial court. The trial court denied SES's motion and granted the City's motion.

## DISCUSSION

### Standard of Review

■ We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A court must grant a traditional motion for summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or in any other response. *See* TEX.R. CIV. P. 166a(c). We review the evidence presented by the summary judgment record in a light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005)). When both sides move for summary judgment, and the trial court grants one motion and denies the other, the reviewing court con-

siders both sides' summary judgment evidence and determines all issues presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005).

■ Where the trial court does not specify the grounds for its summary judgment, the party challenging the order must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Hudiburg Chevrolet, Inc. v. Gen. Motors Corp.*, 114 S.W.3d 680, 684 (Tex.App.-Dallas 2003), *modified*, 199 S.W.3d 249 (Tex.2006); *Williams v. City of Dallas*, 53 S.W.3d 780, 784 (Tex.App.-Dallas 2001, no pet.). The reviewing court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003).

### Breach of Contract

SES contends that the trial court erred in denying its summary judgment motion and granting the City's motion because, at the least, a fact issue exists as to whether the City is liable under the contract. The City responds that SES's breach of contract claim fails as a matter of law because its alleged breach did not cause damage to SES.

#### 1) Applicable Law

■ To prevail on a claim for breach of contract, the plaintiff must establish the following elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant;

*Mexia*, 197 S.W.3d 325, 342 (Tex.2006). *See City of Houston v. S. Elec. Servs., Inc.*, No. 01–06–00015–CV, 2006 WL 3513691, at *3 (Tex. App.-Houston [1st Dist.] Dec. 7, 2006, no pet.) (mem. op.). In the second appeal, we concluded that the trial court had subject matter jurisdiction and affirmed the trial court's or-

der on interlocutory appeal. *See City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739, 745 (Tex.App.-Houston [1st Dist.] 2008, pet. denied). Prior to this appeal, Morganti and all of its subcontractors except SES settled with the City.

and (4) damages sustained by the plaintiff as a result of the breach. *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.-Houston [1st Dist.] 1997, no writ). To recover compensatory damages, the plaintiff must prove that he suffered some pecuniary loss as a result of the breach. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex.App.-El Paso 2000, no pet.); *Multi–Moto Corp. v. ITT Comm. Fin. Corp.*, 806 S.W.2d 560, 569 (Tex.App.-Dallas 1990, writ denied). Such losses must be the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex.1981) (citing *Hadley v. Baxendale*, 9 Exch. 341, 354 (1854)); *see, e.g., Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex.1998) (holding that loss of contingency fees that lawyers might have earned from other clients was not foreseeable and directly traceable to clients' failure to pay amounts due under contract); *Swanson v. Wells Fargo Home Mortg.*, No. 14–02–00732–CV, 2003 WL 22945646, at *3 (Tex. App.-Houston [14th Dist.] Dec. 16, 2003, no pet.) (mem. op.) (holding that alleged "damage" to borrower, i.e. lack of leverage against builder, was not foreseeable consequence of lender's purported breach of loan agreement because no contractual provision existed that lender should withhold monies to give borrower "leverage").

■ Further, a party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or conjectural. *City of Dallas v. Vills. of Forest Hills, L.P., Phase I*, 931 S.W.2d 601, 605 (Tex.App.-Dallas 1996, no writ); *see also Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 205 (Tex.App.-Austin 1992, no writ) (holding that plaintiff's consequential damages were too speculative because no evidence connected damages to defendant's breach of contract); *A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.*, 798 S.W.2d 606, 615 (Tex.App.-Dallas 1990, writ denied) (holding that no recovery exists for speculative damages). Thus, the absence of a causal connection between the alleged breach and the damages sought will preclude recovery. *Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 397 (Tex.App.-El Paso 1998, pet. denied). *Compare Abraxas Petroleum Corp.*, 20 S.W.3d at 758 (holding that legally and factually sufficient evidence existed that breach by operator of oil lease caused damages to working interest owners because, on account of breach, operator seized owners' interest and withheld earnings) *with Clearview Props., L.P. v. Prop. Texas SC One Corp.*, 287 S.W.3d 132, 139–40 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (holding that plaintiff's failure to secure financing for deal caused its damages, rather than any action by defendant in breach of contract claim) *and Tidwell Props., Inc. v. Am. First Nat'l Bank*, No. 14–04–00120–CV, 2006 WL 176862, at *3 (Tex.App.-Houston [14th Dist.] Jan. 26, 2006, no pet.) (mem. op.) (holding that defendant's failure to disclose sublease did not cause breach-of-contract damages because plaintiff's deal fell through for reasons independent of failure to notify plaintiff).

*2) Analysis*

■ Here, SES maintains that it suffered damages in the form of increased labor costs because it used the contract's incorrect prevailing wage schedules, which the City's bid documents designated, in calculating its bid for the project and determining its lump sum contract price for the project. According to SES, the City's breach—i.e., specifying the incorrect rate in the bid documents—caused these damages. SES offered evidence that its representatives relied on the incorrect rate in formulating SES's bid on the project. It

also offered damage models showing the difference between its actual costs and the costs it would have incurred had the rate been capped by the allegedly correct prevailing rate.

SES has failed to raise a fact issue that it suffered any damages as a foreseeable result of the City's alleged breach. *See Swanson*, 2003 WL 22945646, at *3 (affirming defendant's summary judgment on ground that plaintiff's damages did not result from defendant's alleged breach); *see also Stuart*, 964 S.W.2d at 921. The 00812 and 00813 prevailing rates provided by the City were *minimum* rates. For each rate, the contract expressly specified that an employer may pay more than the proscribed amount. The Texas Government Code also states that it does not prohibit the payment of an amount greater than the general prevailing rate to a worker employed on public work. *See* TEX. GOV'T CODE ANN. § 2258.025; *see also Houston Gulf Coast Bldg. & Constr. Trades Council*, 710 S.W.2d at 183 (holding that the purpose of predecessor Texas wage rate statute was to ensure that workers on public projects receive not less than prevailing rate). A duty to provide a correct minimum rate does not make the City a guarantor that an employer hires employees at that rate. *See United States v. Binghamton Constr. Co.*, 347 U.S. 171, 178, 74 S.Ct. 438, 442, 98 L.Ed. 594 (1954) (holding that federal prevailing wage rate statute's requirement that contractor pay not less specified minima presupposes possibility that successful bidder may have to pay higher rate to workers and that bidder's reliance on government's representation of prevailing rate in computing its bid cannot be said to have been justified). According to section 1.2.2 of the contract, Morganti had a duty to "become familiar with local conditions under which the Work is to be performed, and fully informed itself as to conditions under which

the Work is to be performed ... and matters which can affect the Work or costs thereof." The contract thus anticipates that Morganti and its subcontractors bear the risk associated with the costs to perform under the contract. Additionally, under SES's subcontract, SES declared that "it ha[d] investigated all pertinent conditions relative to the performance of the work contained in this Agreement, knowing the character, quantities and sources of materials to be used in performing the work, [and] the labor conditions prevalent in the area in which the work is to be performed." SES does not seek the difference between the 00812 rate and the 00813 rate as damages. *Cf. Morrison–Hardeman–Perini–Leavell v. United States*, 183 Ct.Cl. 938, 392 F.2d 988, 997 (1968) (noting that contractor can recover against government, where government directed contractor to pay, both retroactively and in future, new higher minimum prevailing rate). Rather, SES seeks the difference between its actual costs and the prevailing rates specified in the contract capped at a rate the City never asked SES to pay. SES received the benefit of its bargain; it was required to pay a prevailing wage to its workers as a *minimum* in exchange for the lump sum amount under the contract. That SES paid its workers amounts that exceeded both of those minimums is a separate matter that the contract leaves to SES's discretion, and it does not obligate the City to assume the cost of those rates.

In response, SES points out that the contract relieved it of any duty to verify that the prevailing wage rates that the City provided were correct. It cites section 3.12.3 of the agreement: "It is not the Contractor's responsibility to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regu-

lations." Although SES had no duty to verify that the prevailing wage rates were in accordance with the law, SES had a duty, as we note above, under the contract to know local conditions and matters affecting cost, which would include labor. Section 3.12.3 does not relieve SES of this duty. SES further asserts that the case law supports its contention that it can recover damages from the City for providing the incorrect prevailing wage rate even though the contract required SES to investigate local conditions and know matters affecting cost. *See Shintech Inc. v. Group Constr., Inc.*, 688 S.W.2d 144, 150 (Tex. App.-Houston [14th Dist.] 1985, no writ) (holding that contractor could recover damages from owner for losses due to delay, although contractor agreed to assume responsibility for timely completing work for agreed compensation, because owner agreed to be liable for causing delays in contractor's work schedule); *IT Corp. v. Motco Site Trust Fund*, 903 F.Supp. 1106, 1121–22 (S.D.Tex.1994) (holding that contractor could recover damages from owner for misrepresenting site conditions despite contractor's right to investigate site before bidding because owner represented that data it included in contract was sufficient information for contractor to prepare its bid); *see also Mas-Tec N. Am., Inc. v. El Paso Field Servs., L.P.*, 317 S.W.3d 431, 456 (Tex.App.-Houston [1st Dist.] 2010, pet. filed) (holding that contractor was not precluded from recovering damages against owner for defective specifications stated in contract, notwithstanding lump-sum and pre-bid investigation provisions in contract, because owner made positive assurances concerning reliability of said specifications). We reject SES's reliance on these cases. Here, the City provided a minimum rate that SES had to pay its workers, but made no positive assurances that SES could hire workers at this rate. The City never represented that SES should calculate its labor costs for its bid based on the rate the City provided.

We hold that the alleged damages to SES—increased labor costs—were not a foreseeable consequence of the City's alleged breach of the contract because the contract did not allocate the risk of increased costs to the City. Accordingly, we affirm the trial court's grant of summary judgment for the City on the breach-of-contract claim.

*Prompt Payment Act Claim*

SES asserts that the trial court erred in granting summary judgment on the City's liability for prompt payment of interest. The Prompt Payment Act provides that if a governmental entity does not make timely payments under a contract with a vendor of goods or services, the vendor may suspend performance and recover interest accruing on any undisputed late payments. *See* TEX. GOV'T CODE ANN. §§ 2251.025, 2251.051 (West 2008). Here, undisputedly SES received the full payment as specified in its subcontract. In its petition, SES does not claim that the City failed to pay it for any goods or services provided. Rather, SES contends that the City owes it additional payment under the contract because of its breach of contract plus prompt payment of interest on this additional payment. Our holding that SES's breach of contract claim lacks merit renders the Prompt Payment Act inapplicable. The trial court therefore correctly rejected SES's Prompt Payment Act Claim.

**CONCLUSION**

We grant SES's motion for rehearing and deny all other pending motions as moot. We hold that (1) SES failed to raise a material fact issue that the City's contractual breach caused damages to SES, and (2) SES's claim for interest under the

Prompt Payment Act fails as a matter of law. Accordingly, the trial court properly granted summary judgment. We therefore affirm the judgment of the trial court.