**AFFIRMED; Opinion Filed October 13, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00151-CV

### G.C. BUILDINGS, INC., Appellant
### V.
### RGS CONTRACTORS, INC., Appellee

### On Appeal from the 191st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-03-04559-J

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Myers
Opinion by Justice Myers

G.C. Buildings, Inc. appeals the trial court's judgment that it take nothing on its claims against RGS Contractors, Inc. for breach of contract following a trial before the court. Appellant brings four issues on appeal contending (1) appellant provided evidence on each element of its contract cause of action and there was no contrary evidence; (2) appellant is not estopped from pursuing damages; (3) appellant did not assign its claims to the United States Department of Housing and Urban Development (HUD); and (4) certain of the trial court's "findings" were not proper findings of fact. We affirm the trial court's judgment.

### BACKGROUND

In 1997, appellant hired appellee to build an apartment complex on property owned by appellant in Oklahoma. The project was financed by a $7 million loan from GMAC Commercial Mortgage, and that loan was insured by HUD. The contract called for completion of work by

February 1, 1999. Due to a fire, the parties extended the completion date to May 4, 2000. Although the buildings were substantially completed and possession was turned over to appellant by June 8, 2000, there was an extensive punch list of problems with the individual units that prevented most of them from being leased. The contract provided that the date of final completion was "the date the HUD representative signs the final HUD Representative's Trip Report." The final trip report was signed on October 12, 2000, 161 days after May 4.

From May to December 2000, appellant made monthly (and occasionally bimonthly) interest payments on the loan, averaging about $46,520 per month and totaling $372,156.14. Appellant's income from rentals was $1,500 in June 2000 and by August 2000 had risen to $9,000. Appellant's chief financial officer testified that if all the apartments had been rentable in May 2000, the rental income would have been $77,400 per month. In January 2000, appellant defaulted on the loan and abandoned the property to GMAC and HUD.

The contract between appellant and appellee contained a liquidated-damages provision stating that if the construction was not completed timely, the amount appellee would be paid under the contract

> shall be reduced by $2,101.68, as liquidated damages, for each day of delay until the date of final completion. When the Owner cost certifies to HUD, the actual cost of interest, taxes, insurance, mortgage insurance premiums, and construction and permanent loan extension fees, as approved by the Commissioner, for the period from the scheduled date of completion through the date construction was actually completed, shall be determined. The lesser of the liquidated or actual damages shall be applied.

Appellant did not certify to HUD "the cost of interest, taxes, insurance, mortgage insurance premiums, and construction and permanent loan extension fees . . . from the scheduled date of completion through the date construction was actually completed." Instead, appellant approved appellee being paid with no deduction for actual or liquidated damages for the delay.

In May 2003, appellant brought suit against appellee, alleging appellee breached the contract by not finally completing construction by May 4, 2000. Appellant sought "liquidated damages of $2,101.68 per day for each day of delay until final completion or the actual cost of interest, taxes, insurance, mortgage insurance premiums and extension fees, whichever is less." Alternatively, appellant sought "its actual damages based on the General Conditions and applicable common law."

During trial, appellant presented evidence that it made interest payments after May 4, 2000 on the loan of $372,156.14. Appellant calculated the amount of liquidated damages as $338,370.48. Appellant's chief financial officer testified appellant would have had to make the interest payments regardless of whether the project was timely completed. The trial court concluded that appellant "has failed . . . to establish a proper measure of damages against" appellee."

## DAMAGES

In its first issue, appellant contends it "provided evidence on each element of its contract cause of action and there was no contrary evidence." We interpret appellant's issue as contending that appellant proved its breach-of-contract cause of action as a matter of law, and that the trial court's determination that appellant did not prove its cause of action was against the great weight and preponderance of the evidence.

When reviewing a trial court's findings of fact and conclusions of law for legal and factual sufficiency, we apply the same standards used in reviewing the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When an appellant attacks the legal sufficiency of the evidence to support an issue on which the appellant had the burden of proof, the appellant must show the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing

–3–

a "matter of law" challenge, we first examine the record for evidence supporting the finding, and then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* We sustain the point of error only if the contrary proposition is conclusively established. *Id.*

When a party attacks the factual sufficiency of an adverse finding, it must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We must consider and weigh all of the evidence and can set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

One of the elements of a claim for breach of contract that appellant had the burden of proving is that the breach of the contract caused appellant's damages. *See Marquis Acquisitions, Inc. v. Steadfast Ins. Co.*, 409 S.W.3d 808, 813 (Tex. App.—Dallas 2013, no pet.) (elements of breach of contract are "(1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."). To recover damages for breach of contract, appellant had to prove it suffered some pecuniary loss as a result of the breach. *S. Elec. Servs., Inc. v. City of Hous.*, 355 S.W.3d 319, 324 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The "losses must be the natural, probable, and foreseeable consequence of the defendant's conduct." *Id.* (citing *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981)). The absence of a causal connection between the alleged breach and the damages sought will preclude recovery. *Id.*

In its brief on appeal, appellant argues it

submitted evidence based on an out of pocket measure of damages premised on its interest payments prior to final completion and ending when it abandoned the project. Those amounts are set forth in GCB exhibits 8 and 9 and aggregate $372,156.14. Alternatively, GCB submitted evidence of liquidated damages of $338,370.48 per Article 2E [sic] of the Construction Contract.

Appellant's chief financial officer testified that appellant had to make those interest payments regardless of whether the apartments were timely completed:

> Q. After May [4, 2000], you were already obligated to make interest payments under the mortgage, were you not?
>
> A. Yes.
>
> . . . .
>
> Q. GCB would have been making interest payments to GMAC regardless of how many apartments were available for occupancy, correct?
>
> A. Yes, we have a commitment to pay GMAC for the money we borrowed from them.
>
> . . . .
>
> Q. Okay. That represent[s] interest payments on the loan that you would have been making anyway, sir; isn't that right?
>
> A. Yes.

Because appellant had to make the interest payments regardless of whether the construction was timely, the interest payments were not the consequence of appellee's alleged failure to timely complete construction. The interest payments were not the result of the breach of the contract and were not "the natural, probable, and foreseeable consequence" of any breach by appellee for untimely completing the construction. *Mead*, 615 S.W.2d at 687. We conclude the evidence is legally and factually sufficient to support the trial court's determination that appellant failed to prove the interest payments were damages from appellee's untimely completion of the construction.

Appellant also argues it is entitled to liquidated damages under "Article 2E of the Construction Contract." Article 2E does not concern liquidated damages.[1] However, article 2C addresses liquidated damages. That provision states,

> C. If the work is not brought to final completion in accordance with the Drawings and Specifications, including any authorized changes, by the date specified above, or by such date as to which the contract time may be extended, the maximum sum stated in Article 3A(1) below shall be reduced by $2,101.68, as liquidated damages, for each day of delay until the date of final completion. When the Owner cost certifies to HUD, the actual cost of interest, taxes, insurance, mortgage insurance premiums, and construction and permanent loan extension fees, as approved by the Commissioner, for the period from the scheduled date of completion through the date construction was actually completed, shall be determined. The lesser of the liquidated or actual damages shall be applied. The applicable amount shall be reduced by the project's net operating income.

Thus, the contract provided that if appellee did not complete construction timely, then the amount appellee would be paid under the contract would be reduced by either the liquidated damages amount or the amount that appellant certified to HUD was the cost of the interest, etc., during the delay, whichever was less. Appellant did not certify to HUD that it had any costs for interest, etc. during the delay, so appellant was not entitled to have the amount appellee was paid reduced by the amount of the liquidated damages. The contract did not provide for recovery of liquidated damages for delay outside of the procedure set forth in article 2C of the contract.

We conclude the trial court's determination that appellant failed to prove its damages from breach of contract was supported by legally and factually sufficient evidence. We overrule appellant's first issue.

In the second and third issues, appellant contends it was not estopped from pursuing damages and that it did not assign its breach-of-contract claim to HUD. Because we have

---

[1] Article 2E provides, "E. The date of final completion shall be the date the HUD representative signs the final HUD Representative's Trip Report provided that the trip report is subsequently endorsed by the Chief Architect."

determined appellant failed to prove the element of damages, determination of these issues is not necessary for final disposition of the appeal. Accordingly, we do not address these issues. *See* Tex. R. App. P. 47.1 (opinion must address "every issue raised and necessary to final disposition of the appeal").

## FINDINGS OF FACT

In its fourth issue, appellant contends that the trial court's findings of fact 12 through 15, 21, 22, and 24 were not findings of fact. Appellant asserts these "findings" are legal conclusions or the trial court's legal interpretation of the contracts. Appellant did not object to any of the findings, he cites no authority for the proposition that the mislabeling of conclusions of law as findings of fact is reversible error, and he provides no argument explaining why the mislabeling constitutes reversible error. When a conclusion of law is mislabeled as a finding of fact, the mislabeled conclusion is reviewed de novo instead of for evidentiary sufficiency. *See In re Office of Attorney Gen. of Tex.*, 264 S.W.3d 800, 804 n.3 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding); *Nikolai v. Strate*, 922 S.W.2d 229, 237 n.1 (Tex. App.—Fort Worth 1996, writ denied).

Appellant also asserts there was no evidence to support these findings. For purposes of this appeal, only finding 24 is relevant because it concerns appellant's proof of damages. The relevant portion of that finding states, "GCB's only offer of alleged damages is certain interest payments made by GCB on the loan. In that regard, GCB agrees that it would have had to pay those same interest payments on the loan any way, regardless of whether there was delay under the Contract or not." That finding of fact was supported by the testimony of appellant's chief financial officer, who testified appellant had to make the interest payments regardless of whether the apartments were timely constructed. This finding was supported by legally and factually sufficient evidence.

We conclude appellant has not shown reversible error in this issue. We overrule appellant's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/  
LANA MYERS  
JUSTICE

130151F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

G.C. BUILDINGS, INC., Appellant

No. 05-13-00151-CV      V.

RGS CONTRACTORS, INC., Appellee

On Appeal from the 191st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-03-04559-J.
Opinion delivered by Justice Myers. Justices Francis and Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee RGS CONTRACTORS, INC. recover its costs of this appeal from appellant G.C. BUILDINGS, INC.

Judgment entered this 13th day of October, 2014.