**Opinion issued December 15, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00920-CV
_____

## ZUHAIR HILLAIL, Appellant

## V.

## BUSHI BAN INTERNATIONAL LLC AND SYED AHMED, Appellees

---

On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Case No. 2012-52312

---

## MEMORANDUM OPINION

Appellant, Zuhair Hillail, appeals from a final judgment in favor of Appellees, Syed Ahmed and Bushi Ban International LLC. In five issues, Hillail contends that there is legally insufficient evidence supporting Appellees' claims for breach of contract, tortious interference with existing contracts, defamation,

and business disparagement; legally insufficient evidence supporting the trial court's award of damages; and legally insufficient evidence supporting the trial court's award of attorney's fees. We conclude that none of Appellees' claims are supported by legally sufficient evidence. Therefore, we reverse the trial court's judgment and render judgment in favor of Hillail.

## Factual and Procedural Background

Syed "Zulfi" Ahmed is a professional martial artist. He is the creator of the Bushi Ban martial arts system and the owner and founder of Bushi Ban International LLC ("Bushi Ban"). Bushi Ban owns or franchises Bushi Ban martial arts schools, many of which are located in and around Houston, Texas.

Zuhair Hillail is Ahmed's former business partner. Over the course of their decades-long relationship, Hillail and Ahmed opened and operated several Bushi Ban schools in the greater Houston area, including Bushi Ban Clear Lake, Bushi Ban League City, Bushi Ban Pearland, and Bushi Ban South Houston.

### Ahmed and Hillail have a falling out and end their relationship

In 2009, Ahmed and Hillail had a contentious falling out, marking the beginning of the end of their business relationship. That October, they entered into a mediated settlement agreement under which Ahmed and Bushi Ban sold their ownership interests in Bushi Ban Clear Lake and Bushi Ban League City to Hillail.

2

Hillail assumed responsibility for the two schools, renaming them Tiger's Dojo Clear Lake and Tiger's Dojo League City.

However, after they executed the settlement agreement, Hillail and Ahmed remained business partners—they continued to own Bushi Ban Pearland together with a third owner, Jeff Barley; and they continued to own Bushi Ban South Houston together with a third owner, Eric Loveless.

Later, in July 2010, Ahmed and Hillail entered into a second mediated settlement agreement (the "Pearland Agreement"). The mediation took place on July 19, 2010, and the Pearland Agreement was executed ten days later, on July 29, 2010.

Under the Pearland Agreement, Hillail sold his ownership interest in Bushi Ban Pearland to Ahmed, Barley, and Bushi Ban for $70,000.00. The Pearland Agreement included a confidentiality provision that prohibited the signatories from disclosing the terms to third parties:

> The Parties agree that the terms of this Settlement Agreement shall remain confidential and shall not be disclosed to any third party (other than the Parties' attorneys and legal counsel; to the spouses and immediate family members of a party; to certified public accountants or other financial professionals; and any court at law as may be required for enforcement of this agreement; and as may be required by court order or law).

*Ahmed comes to suspect interference and sabotage from Hillail, leading Appellees to file suit*

In 2012, there were three developments that eventually led Ahmed and Bushi Ban to file this lawsuit against Hillail.

First, Ahmed learned that Hillail had disclosed the terms of the Pearland Agreement to Hillail's former employee, Davis Graham. Ahmed learned this from Graham himself, who reached out to Ahmed after ending his relationship with Hillail on very bad terms.[1] Graham told Ahmed that, on the evening of the mediation, Hillail returned to one of his Tiger's Den schools,[2] where Graham was still working. According to Graham, Hillail proceeded to tell Graham the results of the mediation and to show him the document that the mediating parties had prepared. The Pearland Agreement had not yet been formally executed at this point.

Second, Educational Funding Company ("EFC")—a martial arts billing and consulting company that processes the billing for several Bushi Ban schools and occasionally pays Ahmed to speak at conventions and seminars—provided Ahmed

---

[1] Graham testified that he met with Ahmed "probably a few days" after he stopped working for Hillail. During their conversation, Graham informed Ahmed that he "had been made aware of the mediation and the results of it and a dollar amount." When Graham told him the dollar amount, Ahmed realized that Graham had "independent knowledge of the settlement . . . ."

[2] Hillail changed the name of his martial arts schools from Tiger's Dojo to Tiger's Den.

4

a recording of a phone conversation in which Hillail falsely informed EFC representatives that Ahmed was going to leave EFC as a client. The recording indicated that Hillail called EFC, ostensibly to report an allegedly fraudulent attempted charge on Hillail's credit card. During the call, Hillail accused EFC of attempting to steal from him and warned that if EFC did not immediately stop the alleged misconduct, he would cause "big guns" like Ahmed to leave EFC as clients. Hillail then told EFC that several of his colleagues had told him that Ahmed was already leaving EFC as a client and that EFC's chairman and management were very upset about it. As a result of Hillail's call to EFC, Ahmed received several concerned calls from EFC representatives, who were worried that Ahmed was going to leave EFC as a client. Ahmed assured them that he had no intention of leaving EFC, and, in the process of doing so, he told them about his contentious falling out with Hillail and the disputes that followed.

Third, three Bushi Ban schools—Bushi Ban Champion Forest, Bushi Ban South Houston, and Bushi Ban Stafford—shut down. The reasons for the school closures varied. Bushi Ban Champion Forest closed because of an ownership dispute between Ahmed and the school's manager, Eric Logan. Bushi Ban South Houston closed because Eric Loveless, the school's manager and part owner,

inexplicably disappeared.[3] And Bushi Ban Stafford closed because one of school's owners, Sam Hogar, pulled his investment for reasons not made clear by the record. In light of the other developments in 2012, Ahmed suspected that the school closures were somehow caused by Hillail.

On September 11, 2012, Appellees filed this lawsuit against Hillail. They asserted claims for breach of contract, tortious interference with existing contracts, defamation, and business disparagement. Appellees alleged that Hillail violated the Pearland Agreement's confidentiality provision by disclosing the agreement's terms to Graham; that Hillail tortiously interfered with Bushi Ban Champion Forest, Bushi Ban South Houston, and Bushi Ban Stafford by encouraging Logan, Loveless, and Hogar to end their relationships with Appellees; and that Hillail defamed and disparaged Appellees by falsely informing EFC representatives that Ahmed was leaving EFC as a client. Appellees sought attorney's fees under Civil Practice and Remedies Code chapter 38 for their breach of contract claim.

On July 30, 2015, after a one-day bench trial, the trial court signed its final judgment. The judgment found in favor of Appellees, but did not specify for

---

[3]     Loveless disappeared while a lawsuit he and Ahmed had filed against Hillail was still pending. Earlier that year, Ahmed and Loveless had sued Hillail, alleging that Hillail had been overpaid under Bushi Ban South Houston's profit-sharing arrangement. After Loveless's disappearance, the suit went to trial. Loveless did not testify or otherwise appear at the trial.

which claims. The judgment ordered that Appellees recover $10,000.00 in damages, $8,500.00 in attorney's fees, and court costs.

On August 31, 2015, Hillail moved for a new trial, which was denied by operation of law. Hillail timely appealed.

## Sufficiency of the Evidence

### A. Standard of Review

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing the evidence for legal sufficiency, we review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

"A party will prevail on its legal-sufficiency challenge of the evidence supporting an adverse finding on an issue for which the opposing party bears the burden of proof if there is a complete absence of evidence of a vital fact or if the evidence offered to prove a vital fact is no more than a scintilla." *Id.* "More than a scintilla exists when the evidence as a whole rises to a level enabling reasonable and fair-minded people to have different conclusions." *Id.* "However, if the

evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Id.*

## B. Tortious Interference

In his second issue, Hillail challenges the legal sufficiency of Appellees' claim for tortious interference with existing contracts.

### 1. *Applicable Law*

To prevail on a claim for tortious interference with an existing contract, the plaintiff must plead and prove that: (1) the plaintiff has an existing contract subject to interference; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused the plaintiff's injury; and (4) the interference caused the plaintiff to suffer actual damage or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 509 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

To prove the second element, willful and intentional interference, the plaintiff must show either that the defendant intentionally induced or caused a third party to breach its contract with the plaintiff or that the defendant intentionally interfered with the plaintiff's performance of its contract. *Stroud Prod., L.L.C. v. Hosford*, 405 S.W.3d 794, 820 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("To establish the element of an act of willful and intentional interference, the

plaintiff must produce some evidence that the defendant was more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under the contract."); *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 359–60 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("Any interference that makes performance more burdensome or difficult or of less or no value to the one entitled to performance is actionable.").

To prove the third element, proximate cause, the plaintiff must show that "the evidence, and logical inferences drawn from the evidence, support a reasonable probability that the defendant's acts or omissions were a substantial factor in bringing about injury." *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 474 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

### 2. *Analysis*

Hillail contends that Appellees failed to present legally sufficient evidence of their claim for tortious interference with existing contracts. In response, Appellees contend that there is legally sufficient evidence that Hillail tortiously interfered with their contracts with Bushi Ban South Houston, Bushi Ban Champion Forest, and Bushi Ban Stafford. We consider each instance of alleged interference in turn.

First, we consider whether there is legally sufficient evidence that Hillail tortiously interfered with a contract between Appellees and Bushi Ban South

9

Houston.  In 2012, Bushi Ban South Houston closed down after the school's manager, Eric Loveless, stopped coming to work and stopped communicating with Ahmed and other Bushi Ban employees.

Appellees contend that Hillail intentionally induced or caused Loveless to quit his job and to end his relationship with Bushi Ban South Houston and Appellees.  In support of their contention, Appellees offered a recording of a phone conversation between Hillail and Loveless that took place in 2013 and the testimony of Ahmed.  That evidence established the following facts:

- In 2012, Ahmed and Loveless sued Hillail, alleging that Hillail had been overpaid under Bushi Ban South Houston's profit-sharing arrangement.

- While Ahmed's and Loveless's lawsuit against Hillail was still pending, Loveless inexplicably disappeared.  As a result of Loveless's disappearance, Bushi Ban South Houston was forced to close down.

- Later, in 2013, Hillail asked Loveless to testify in a different lawsuit between Hillail and Ahmed.  Specifically, Hillail asked Loveless to testify that Ahmed had forced him to join the initial lawsuit over Bushi Ban South Houston's profit-sharing.  In exchange for Loveless's agreement to testify, Hillail said he would sign a release of his claims against Loveless.

These facts fail to establish at least three of the essential elements of a claim for tortious interference with an existing contract.  First, they fail to establish that there was a valid, enforceable contract between either of Appellees and Loveless or Bushi Ban South Houston.  Second, they fail to establish that Hillail willfully and

10

intentionally interfered with any such contract. Third, they fail to establish that any such interference proximately caused the closure of the school.

Appellees never offered a contract between Loveless and themselves or testified that such a contract ever existed. *See Stroud Prod.*, 405 S.W.3d at 820 ("To prevail on a tortious interference claim, the plaintiff must present evidence that the defendant interfered with a *specific contract*." (emphasis added)).

At trial, after listening to the recording of the phone conversation between Hillail and Loveless, Ahmed speculated that Hillail influenced Loveless to stop working at Bushi Ban South Houston and that the two had some sort of side deal:

> Counsel: Do you believe that Mr. Hillail was responsible in any way for the Bushi Ban South and Mr. Loveless stopped communication and the school folded?
>
> Ahmed: I believe he was an influencing factor.
>
> Counsel: In what way?
>
> Ahmed: Mr. Loveless looked up to Mr. Zuhair. Mr. Zuhair was Mr. Loveless senior instructor and took a lot of information and cues from Mr. Zuhair and I believe that Mr. Zuhair listening to this recording had probably a side deal with Mr. Loveless. And yes, I believe he influenced Mr. Loveless's decision.

But Appellees never offered any testimony or other evidence substantiating Ahmed's speculation. Appellees never offered any evidence demonstrating that Hillail knowingly induced Loveless to breach an obligation under a contract with Appellees. *See id.* We cannot conclude from the evidence, and the logical

inferences drawn from it, that there is a reasonable probability that Hillail's acts or omissions were a substantial factor in bringing about the closure of Bushi Ban South Houston. *Richardson-Eagle*, 213 S.W.3d at 474. We hold that there is legally insufficient evidence that Hillail tortiously interfered with a contract between Appellees and Bushi Ban South Houston.

Second, we consider whether there is legally sufficient evidence that Hillail tortiously interfered with a contract between Appellees and Bushi Ban Champion Forest. In 2012, Bushi Ban Champion Forest closed down after its manager, Eric Logan, quit his job and removed all of his equipment from the school. Appellees contend that Hillail intentionally induced or caused Logan's actions.

In support of their contention, Appellees offered evidence that Logan currently works for Hillail. This fact is not legally sufficient to support Appellees' claim for tortious interference with an existing contract: It does not establish that there was a valid, enforceable contract between either of Appellees and Logan or Bushi Ban Champion Forest; it does not establish that Hillail willfully and intentionally interfered with any such contract; and it does not establish that any such interference proximately caused the closure of the school.

Moreover, all of the other evidence presented at trial indicated that Logan began working for Hillail due to a falling out between Logan and Ahmed. At trial, Logan testified that he started practicing Bushi Ban martial arts when he was ten

years old, eventually graduated from student to instructor, and was ultimately hired as the manager of Bushi Ban Champion Forest. After spending many years at Bushi Ban Champion Forest, Logan believed that he should have become one of the owners. Ahmed disagreed and asked Logan to sign an employment agreement under which Logan would continue to be the manager, but not an owner, of the school. As a result, Logan quit his job and removed all of his equipment from the school, forcing the school to shut down.

In an email to Ahmed, Logan explained that he had decided to end his relationship with Appellees because he did not receive enough respect from Ahmed and because he did not believe Ahmed had made him a fair offer.[4] Ahmed sued Logan, and the two eventually settled.

It was not until July 2014—roughly two years after the closure of Bushi Ban Champion Forest—that Logan began working for Hillail. Logan, moreover, testified that his decision to leave Bushi Ban Champion Forest had nothing to do with Hillail—the two "weren't even speaking at the time."

We cannot conclude from the evidence, and the logical inferences drawn from it, that there is a reasonable probability that Hillail's acts or omissions were a

---

[4]  Logan provided similar testimony at trial, stating: "I just felt like I was very disrespected in the organization. I didn't feel like I was getting the respect that was deserved of me somebody that had been there a very, very long time. There was an agreement that I was asked to sign that I did not agree with. Ultimately, led me and my family making a decision to close down that location."

substantial factor in bringing about the closure of Bushi Ban Champion Forest. *Richardson-Eagle*, 213 S.W.3d at 474. The only conclusion that the evidence supports is that Bushi Ban Champion Forest closed because of an ownership dispute between Ahmed and Logan. We hold that there is legally insufficient evidence that Hillail tortiously interfered with a contract between Appellees and Bushi Ban Champion Forest.

Third, we consider whether there is legally sufficient evidence that Hillail tortiously interfered with a contract between Appellees and Bushi Ban Stafford. Appellees contend that Hillail intentionally induced or caused Sam Hogar to pull his investment in and support of Bushi Ban Stafford, forcing Appellees to sell the school at a loss. However, at trial, when asked whether he had to sell Bushi Ban Stafford because of Hillail's "interference," Ahmed gave non-responsive answer:

> Counsel: Did you have to sell the martial arts school that you had with Mr. Hogar?
>
> Ahmed: Yes, sir.
>
> Counsel: Was it because of Mr. Hillail's interference?
>
> Ahmed: I believe it is because --

Because Appellees offered no other evidence in support of their contention, we hold that there is legally insufficient evidence that Hillail tortiously interfered with a contract between Appellees and Bushi Ban Stafford.

14

Accordingly, we hold that there is legally insufficient evidence supporting Appellees' claim for tortious interference with existing contracts. We sustain Hillail's second issue.

## C.     Business Disparagement

In his third issue, Hillail contends that there is legally insufficient evidence that he made a disparaging or defamatory statement about Appellees.

### 1.     *Applicable Law*

To prevail on a claim for business disparagement, the plaintiff must plead and prove, among other elements, that the defendant published false, disparaging information about it. *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 358 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Likewise, to prevail on a claim for defamation, the plaintiff must plead and prove, among other elements, that the defendant published to a third party a false and defamatory statement concerning the plaintiff. *In re Lipsky*, 460 S.W.3d at 593; *Better Bus. Bureau of Metro. Houston*, 441 S.W.3d at 355.

In an action for business disparagement, the disparaging words must refer to the plaintiff's economic interests. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987). The Restatement of Torts provides the following definition of disparagement:

A statement is disparaging if it is understood to cast doubt upon the quality of another's land, chattels or intangible things, or upon the existence or extent of his property in them, and

(a)    the publisher intends the statement to cast the doubt, or

(b)    the recipient's understanding of it as casting the doubt was reasonable.

RESTATEMENT (SECOND) OF TORTS § 629 (1977).

In an action for defamation, the plaintiff must show that the defendant's "words tend to injure the plaintiff's reputation, exposing it to public hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue." *Better Bus. Bureau of Metro. Houston*, 441 S.W.3d at 355–56 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2011)). To be defamatory, the defendant's words "should be derogatory, degrading, somewhat shocking, and contain elements of disgrace." *Id.* at 356. "But a communication that is merely unflattering, abusive, annoying, irksome, or embarrassing, or that only hurts the plaintiff's feelings, is not actionable." *Id.* "Thus, it is not defamatory to accuse a person of doing that which he has a legal right to do." *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App.—Austin 2010, no pet.); *Associated Press v. Cook*, 17 S.W.3d 447, 456 n.8 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (statement that plaintiff was "exercising a legal right is not defamatory as a matter of law").

Whether an unambiguous statement is disparaging or defamatory is a question of law, which we review de novo. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000); *Better Bus. Bureau of Metro. Houston*, 441 S.W.3d at 356. "When considering whether a statement is defamatory, we construe the statement as a whole, in light of the surrounding circumstances, based on how a person of ordinary intelligence would perceive the entire statement." *Means*, 315 S.W.3d at 214.

### 2. *Analysis*

Appellees based their claims for business disparagement and defamation on the recording of the phone conversation between Hillail and representatives of EFC. Although Appellees do not identify any specific statements in the recording that are disparaging and defamatory, they argue that the recording constitutes legally sufficient evidence supporting their claims because it shows Hillail falsely stating that Ahmed was planning on leaving EFC as a client.

The recording indicates that Hillail called EFC ostensibly to report an allegedly fraudulent attempted charge on Hillail's credit card. He began the call by telling the EFC representative that "yesterday your company attempted to run a charge of 199 dollars on my Visa card—unauthorized, un-asked for, an absolute theft." Hillail told the EFC representative that he was a "big guy in the industry" with "a tremendous amount of influence and a very loud mouth." He proceeded to

17

accuse EFC of attempting to steal from him and warned that if EFC did not immediately stop the alleged misconduct, he would cause "big guns" like Ahmed to leave EFC as clients:

> I'm a martial artist, respect my request and listen. If you don't want me to go on a negative campaign and truly smear your company more than it already has been smeared, and make the big guns that are with you like Zulfi Ahmed exit from your deal like they have exited, you need to stop this activity immediately. . . . I spent twenty-one years with Zulfi Ahmed, and that's one of the reasons I didn't join your company ever with my schools, because of these issues that keep happening over and over.

Hillail then told the EFC representative that several of his colleagues had told him that Ahmed was already leaving EFC as a client and that EFC's chairman and management were very upset about it:

> Hillail: What's the story with Zulfi Ahmed, Ned?
>
> EFC: Oh, he's a very good friend of ours.
>
> Hillail: I understand that. . . .
>
> EFC: He's our biggest client and we love him dearly.
>
> Hillail: And?
>
> EFC: He's been . . . what's the 'and'? I mean, there is no 'and'.
>
> Hillail: Is he leaving you guys?
>
> EFC: No way. Why would he be leaving us?
>
> Hillail: I understood that the chairman was quite upset about something that had to do with Zulfi.

EFC: Not at all. Not at all. That's misled. That's not true.

Hillail: Then there's negative news going through your company because several of my colleagues received phone calls from high up in your company saying that the chairman and the entire EFC management is quite upset about something that's going on with Zulfi Ahmed.

EFC: Nothing whatsoever. That's all a foul . . . that's a lie.

Hillail: I tell you there's a tremendous amount of negative stuff happening. . . . I'm not a client of yours, so it doesn't really help me or hurt me. . . . You just need to be aware of what's happening.

It is this final portion of the call that Appellees contend is disparaging and defamatory. We disagree.

Hillail's statements do not directly refer to Appellees' economic interests; they cannot be said to "cast doubt upon the quality of [Appellees'] land, chattels or intangible things, or upon the existence or extent of [their] property in them . . . ." *See* RESTATEMENT (SECOND) OF TORTS § 629. Hillail's statements do not, for example, indicate that Appellees are in a precarious financial position or are otherwise unable to continue doing business with EFC. Nor do they suggest that Appellees are untrustworthy or unethical or unscrupulous. Hillail's statements do not concern Appellees' financial position or the character of their business.

Further, Hillail's statement cannot be characterized as tending to injure Appellees' reputations, exposing them to public hatred, contempt, ridicule, or financial injury, or as tending to impeach Appellees' honesty, integrity, or virtue.

19

*See Better Bus. Bureau of Metro. Houston*, 441 S.W.3d at 355–56. Although Ahmed testified that Hillail's statements injured his reputation and the reputation of Bushi Ban, we do not believe that a person of ordinary intelligence would perceive such statements as tending to do so. Hillail's statements, although false, merely accused Appellees of doing what they had a legal right to do—end their relationship with EFC. *Means*, 315 S.W.3d at 214 ("Thus, it is not defamatory to accuse a person of doing that which he has a legal right to do."). Therefore, they are not defamatory as a matter of law. *Associated Press*, 17 S.W.3d at 456 n.8 (statement that plaintiff was "exercising a legal right is not defamatory as a matter of law").

Construing Hillail's statements as a whole, in light of the surrounding circumstances, based on how a person of ordinary intelligence would perceive the entire statement, we hold that Hillail's statements are neither disparaging nor defamatory. We sustain Hillail's third issue.

## D.    Damages for Breach of Contract

In his fourth issue, Hillail challenges the legal sufficiency of Appellees' damages award. Because we have already concluded that there is legally insufficient evidence supporting Appellees' claims for tortious interference, defamation, and business disparagement, we confine our analysis here to the evidence supporting Appellees' damages for breach of contract. Thus, we consider

whether there is legally sufficient evidence that Appellees suffered $10,000.00 in damages as a result of Hillail's alleged breach of the Pearland Agreement.

### 1.    *Applicable Law*

To recover compensatory damages in an action for breach of contract, "the plaintiff must prove that he suffered some pecuniary loss as a result of the breach." *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The loss "must be the natural, probable, and foreseeable consequence of the defendant's conduct." *Id.* The plaintiff may not recover any damages that are too "remote, contingent, speculative, or conjectural." *Id.* "Thus, the absence of a causal connection between the alleged breach and the damages sought will preclude recovery." *Id.*

### 2.    *Analysis*

Hillail contends that there is legally insufficient evidence that Appellees suffered $10,000.00 as a result of Hillail's alleged violation of the Pearland Agreement's confidentiality provision.

The only evidence of breach-of-contract damages that was offered by Appellees was the testimony of Ahmed and Barley. Ahmed and Barley both initially testified that the Pearland Agreement's confidentiality provision had an independent value of $70,000.00. But they both later admitted that they agreed to

pay $70,000.00 to buy Hillail's ownership interest in Bushi Ban Pearland.[5] Their initial testimony, moreover, directly conflicts with the language of the Pearland Agreement itself, the recitals of which expressly state that the $70,000.00 was payment for Hillail's interest in Bushi Ban Pearland:

> WHEREAS, on July 19, 2010, the parties agreed that Hillail would transfer his entire interest in the past, present, and future in BBIP . . . in consideration for payment of SEVENTY THOUSAND NO/100 DOLLARS ($70,000.00) . . . .

We hold that Ahmed's and Barley's testimony that the confidentiality provision was worth $70,000.00 is not evidence that Appellees suffered $10,000.00 in damages as a result of Hillail's alleged breach.

Ahmed and Barley provided no other testimony, and Appellees offered no other evidence, supporting an award of $10,000.00 for Hillail's alleged breach. Ahmed testified that the publication of the terms of the Pearland Agreement could cause dissent within the Bushi Ban organization or cause issues between Appellees and other members of the martial arts community. He did not explain how such publication could cause dissent within the Bushi Ban organization or specify which issues might arise between Appellees and other members of the martial arts community. Nor did not he provide any testimony, other than conclusory

---

[5] In fact, Ahmed testified that removing Hillail from Bush Ban Pearland was "worth much more" than $70,000.00, "but that's what [they] settled on."

statements, demonstrating that Hillail's disclosure to Graham actually did cause such harm.

Barley, likewise, testified that the confidentiality provision had value because it prevented third parties—presumably Appellees' employees and competitors—from using the information contained in the Pearland Agreement to their advantage. But neither he nor Ahmed were able to cite to a single example of Graham or another third party using such information to their advantage or to Appellees' detriment.

Appellees offered no evidence that they paid $10,000.00 for the inclusion of the confidentiality provision or that the inclusion of the confidentiality provision was otherwise worth that amount; no evidence that their position would be any different had Hillail not disclosed the terms of the Pearland Agreement to Graham; and no evidence that they were otherwise harmed by Hillail's alleged breach.

We hold that there was legally insufficient evidence that Appellees suffered $10,000.00 in damages as a result of Hillail's alleged breach of the Pearland Agreement. We sustain Hillail's fourth issue.

## E.    Attorney's Fees

In his fifth issue, Hillail contends that there is legally insufficient evidence supporting the trial court's award of attorney's fees.

Appellees were awarded attorney's fees under Texas Civil Practice and Remedies Code chapter 38. "To recover fees under this statute, a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages." *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009) (attorney fee award to copier lessee who prevailed in suit against lessor could not be based upon breach of contract claim because lessee could not recover damages); *see also Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (general contractor who prevailed on breach of contract claim against subcontractor was not entitled to award of attorney fees, where contractor was not awarded damages on that claim).

We have already held that Appellees failed to offer legally sufficient evidence of damages. Therefore, we hold that Appellees failed to offer legally sufficient evidence that they were entitled to recover attorney's fees. We sustain Hillail's fifth issue.

**Conclusion**

We reverse the trial court's judgment and render judgment in favor of Hillail.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Lloyd.