**Opinion issued October 24, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00010-CV

———————————

**MASSOUD MOAYEDI, Appellant**

**V.**

**BEHZAD ARABGHANI, Appellee**

On Appeal from the 125th District Court
Harris County, Texas
Trial Court Case No. 2017-08015

## MEMORANDUM OPINION

Appellant Massoud Moayedi sued appellee Behzad Arabghani for various causes of action, including breach of contract, conversion, breach of fiduciary duty, and assault. Following a bench trial, the trial court signed a final judgment finding Arabghani liable to Moayedi based on breach of contract and awarding Moayedi

damages of $2,000 plus his attorney's fees.[1] On appeal, Moayedi challenges the trial court's judgment by contending that he should have been awarded additional damages against Arabghani and that Arabghani should have been found liable based on additional causes of action.

Because Moayedi has not shown that the trial court erred in rendering its judgment, we affirm.

## Background

Arabghani wanted to open a Mediterranean restaurant, and he approached Moayedi—a business acquaintance—about investing in it. Arabghani had experience managing restaurants, but he lacked the capital needed to open the restaurant. Arabghani also approached Moayedi's friend, Vahid Sadri, about investing in the restaurant. Moayedi and Sadri agreed to invest a total of $100,000 in the restaurant—Moayedi would invest $35,000 and Sadri would invest $65,000.

---

[1] Moayedi also sued Shiraz Café, Inc. In its judgment, the trial court ordered Shiraz Café to pay $6,185.44 in damages to Moayedi. Although listed as an "appellee" in the style of Moayedi's brief, Moayedi does not argue for any relief against Shiraz Café or raise appellate issues against it. Thus, Shiraz Café is not an "appellee." *See Showbiz Multimedia, LLC v. Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771 n.3 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("An appellee . . . must be a party to the trial court's final judgment and must be someone against whom the appellant raises issues or points of error in the appellant's brief."); *see also* TEX. R. APP. P. 3.1(c) (defining "appellee" as "a party adverse to an appellant"); *DHI Holdings, LP v. Legacy Mortg. Asset Tr. 2018-RPLS2*, No. 14-19-00987-CV, 2021 WL 4957023, at *3 (Tex. App.—Houston [14th Dist.] Oct. 26, 2021, pet. denied) (mem. op.) (holding that party identified in briefing as "an appellee" was not "an appellee" because appellant did not argue for any relief against that party on appeal).

As his contribution, Arabghani agreed to manage the restaurant. They agreed that each would receive a monthly pro rata share of the restaurant's profits.

The parties hired an attorney, Pejam Medani, to assist in forming a company—Shiraz Café, Inc.—to operate the restaurant. The corporation was formed on May 2, 2016. Medani drafted the company's articles of incorporation, bylaws, and resolutions as well as an operating agreement between the parties.

The parties agreed that Shiraz Café would issue an initial 2,000 stock shares to be divided among Arabghani, Moayedi, and Sadri. Several months before the restaurant opened, Sadri gave Arabghani $65,000 in cash, and Moayedi wrote five checks to Arabghani totaling $35,000. Based on each party's contribution, the 2,000 shares of stock were divided as follows: (1) Arabghani received 1,300 shares (65% ownership); (2) Sadri received 500 shares (25% ownership); and (3) Moayedi received 200 shares (10% ownership). The parties agreed that Moayedi's and Sadri's $100,000 capital contribution, as well as other corporate funds, would be deposited into a corporate bank account for Shiraz Café.

Moayedi had agreed to invest in the restaurant on the condition that he would be named Shiraz Café's treasurer with the right to control the company's finances. In Shiraz Café's bylaws, Moayedi was named as the Shiraz Café's treasurer. Regarding the treasurer's role, the bylaws provided:

> The Treasurer shall have the custody of the corporate funds and securities; shall keep full and accurate accounts of receipts and

disbursements in books belonging to the Corporation; and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors.

The bylaws also named Moayedi as Shiraz Café's vice president and Arabghani as its president. Arabghani and Moayedi were named as the company's only two directors.

On June 27, 2016, Moayedi and Arabghani held their first board of directors' meeting and signed a resolution. The resolution provided that it was "in the best interest of the corporation to open two business accounts with the following bank, Wells Fargo." Medani, who drafted the resolution, testified that it was customary for a company to have two bank accounts: a corporate account for operating the business and another account for credit card transactions. The resolution further provided that Moayedi would "have access to the bank accounts" and that he could "examine and audit the account at any time without prior notice."

Arabghani did not open a corporate bank account for Shiraz Café. Instead, he deposited the $100,000 that he received from Moayedi and Sabri into his own bank account. Arabghani also did not open a bank account for credit card transactions.

Sadri assigned his 25 percent interest in Shiraz Café to Moayedi, giving Moayedi a 35 percent interest. Arabghani retained his 65 percent interest.

The restaurant opened for business in September 2016. Arabghani refused to give Moayedi access to information about Shiraz Café's finances, including denying

4

Moayedi access to the company's bank records, credit card receipts and statements, and documentation of the company's income and expenses. On January 31, 2017, Moayedi sent Arabghani written correspondence entitled "Need to See Books and Records." Moayedi stated that he was requesting the information as a director and treasurer of Shiraz Café. Moayedi requested "to see [the] Bank Records, including all monthly statements, cash register rolls, [a] list of all expenses along with proper receipts [and] [e]xpense ledgers with supporting documentation such as credit card statements [and] invoices." He also requested income tax information for the restaurant's employees "as well as all records for employee and independent contractor expenditures and any records [that] pertain [to] the restaurant's operation since the opening."

Arabghani did not provide the requested information. On February 3, 2017, Moayedi filed suit against Arabghani and Shiraz Café. Despite naming Shiraz Café as a defendant, Moayedi characterized the suit as a "derivative proceeding," alleging that he brought the suit as a shareholder of Shiraz Café, a closely held corporation, to protect Shiraz Café's interests. Moayedi asserted that the suit "should be treated" by the trial court "as a direct action brought by [him] for [his] own benefit; and that

the recovery [in] this proceeding should be paid directly to [him] or to Shiraz Cafe, Inc."[2]

Moayedi sued Arabghani for breach of contract, breach of fiduciary duty, conversion, fraud, constructive fraud, negligent misrepresentation, and tortious interference. He alleged that Arabghani had failed to deposit the capital contributions and the restaurant's income into a corporate bank account, had used Shiraz Café's funds for his personal benefit, and had refused to allow Moayedi access to Shiraz Café's funds and its records. Moayedi also sued Arabghani for assault, alleging that, when he had asked to see the corporate records, Arabghani had slapped him in the face breaking his eyeglasses. Based on his claims against Arabghani, Moayedi sought actual and exemplary damages, attorney's fees, and injunctive relief.

---

[2]     The general rule in Texas is that "individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock." *Perry v. Cohen*, 285 S.W.3d 137, 144 (Tex. App.—Austin 2009, pet. denied) (quoting *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990)). "Accordingly, an action for such injury must be brought by the corporation, not individual shareholders." *Id.* When a shareholder brings a derivative action on behalf of a closely held corporation, however, the trial court may treat the derivative action as a direct action brought by the shareholder for his own benefit and award recovery directly to the shareholder "if justice requires." *See* TEX. BUS. ORGS. CODE § 21.563(c); *Sneed v. Webre*, 465 S.W.3d 169, 181 (Tex. 2015); *see also* TEX. BUS. ORGS. CODE § 21.563(a) (defining "closely held corporation" to mean corporation with "fewer than 35 shareholders" and "no shares listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national securities association").

6

Moayedi asserted no causes of action against Shiraz Café. Arabghani and Shiraz Café answered, and Shiraz Café filed counterclaims against Moayedi.

The parties agreed to a temporary restraining order prohibiting Arabghani from, inter alia, (1) denying Moayedi access to Shiraz Café's bank account information, (2) denying Moayedi access to the restaurant's premises, (3) accessing company funds to pay himself without Moayedi's consent, and (4) failing to deposit "all revenue in the corporate business account." The trial court later signed a temporary injunction containing those same restrictions.

After the trial court signed the temporary injunction, Shiraz Café failed to pay its rent, and the landlord placed a lock on the door. The restaurant never reopened.

Arabghani did not comply with the temporary injunction's requirements. Despite the non-compliance, Moayedi did not seek to enforce the temporary injunction. Moayedi also served Arabghani with written discovery requests asking Arabghani to disclose how he had used the $100,000 capital contribution and to produce documents reflecting Shiraz Café's expenses and income. Arabghani did not answer the discovery, and Moayedi did not file a motion to compel.

The trial court conducted a bench trial on November 16, 2021. Arabghani and Shiraz Café had been represented by the same attorney, but the attorney withdrew before trial. Shiraz Café did not retain new counsel and defaulted by failing to appear. Arabghani appeared pro se.

In his trial testimony, Arabghani acknowledged that he had not opened a corporate bank account for Shiraz Café and that he had deposited the $100,000 capital contribution received from Moayedi and Sadri and the restaurant's income into his own bank account. Arabghani claimed that it was Moayedi's fault that the corporate account had not been opened. He explained that their corporate attorney, Medani, had advised them that Arabghani and Moayedi had to open the corporate account together. Arabghani testified that he offered several times to go to the bank with Moayedi but Moayedi repeatedly told him that he was unavailable to set up the account. Arabghani said that, as a result, the corporate account was never opened.

Arabghani also acknowledged that he had not allowed Moayedi to have control of or access to Shiraz Café's finances, including access to the $100,000 capital contribution or to the restaurant's income. Arabghani stated that he did not give Moayedi access to the restaurant's funds because Moayedi was a "thief." Arabghani testified that Moayedi had stolen cash from the restaurant's safe, and he claimed that Moayedi had engaged in illicit activities at the restaurant, which Moayedi denied.

Arabghani further acknowledged that he had not given Moayedi direct access to Shiraz Café's records and financial information. Arabghani claimed that, instead, he had put the information in a box and left it at Medani's office for Moayedi to review, but Medani testified that he did not recall the box being at his office.

8

Arabghani denied using the $100,000 capital contribution and the restaurant's income for his own personal benefit. He explained that Moayedi never received any profits from Shiraz Café because there were no profits. And Arabghani testified that he never received compensation for his work at the restaurant.

Moayedi testified that some credit card payments to the restaurant were paid into an account belonging to a company where the restaurant's chef had previously worked, suggesting that the funds had gone to that company rather than to Shiraz Café. Addressing the allegation, Arabghani testified that the credit card payments Moayedi mentioned totaled $311, which the chef had turned over to him in cash.

The evidence showed that, before the restaurant could open, the space rented for the restaurant had to be built-out and remodeled. Equipment for the restaurant also had to be purchased. According to Arabghani, the build-out, the equipment, and rent for the restaurant exhausted the $100,000 capital contribution. Arabghani also testified that he used the restaurant's income to pay for the restaurant's operating expenses, including supplies, utilities, and employee wages. Arabghani testified that the restaurant did not make enough money to pay all of its expenses. And, after the restaurant did not pay its rent, the landlord locked the doors.

Moayedi offered the testimony of one of the restaurant's waitresses. She testified that Arabghani had kept some of the wait staff's tips. She and the restaurant's chef testified that they had not been fully compensated for their work.

9

Moayedi testified that he did not believe that the build-out of the restaurant had cost $100,000. But Moayedi offered no evidence to show the cost of the build-out or any other expenses incurred to open and operate the restaurant.

Moayedi further testified that, when he asked Arabghani about the restaurant's finances in December 2016, Arabghani slapped him in the face, causing Moayedi's eyeglasses to break. Moayedi offered evidence showing that it cost $69 to repair his glasses. On cross-examination, Arabghani denied hitting Moayedi.

The evidence also showed that, after the restaurant opened, Moayedi gave Arabghani a personal loan of $5,000. Moayedi testified that Arabghani repaid him only $3,000 of the loan and that Arabghani still owed him $2,000.

Additional evidence showed that, in 2019, the Texas Comptroller's Office notified Moayedi that Shiraz Café had failed to pay state sales tax. Moayedi testified that, after the Comptroller's Office threatened to place a lien on his home, he paid the delinquent sales tax, totaling $6,185.44.

In his closing argument, Moayedi asked the trial court to award him the following damages: (1) $100,000 for the recovery of the capital contribution that he and Sadri paid to Arabghani; (2) $2,000 for the unpaid balance of the personal loan; and (3) $6,185.44 for the delinquent sales tax that he had paid. Moayedi also asked the trial court to award him $12,500 in attorney's fees.

The trial court ruled that Moayedi should recover $6,185.44 from Shiraz Café to reimburse him for the delinquent sales tax he paid on behalf of the company. The trial court also ruled that, from Arabghani, Moayedi should recover $2,000 for the remaining balance of the $5,000 personal loan and $12,500 in attorney's fees. Regarding Moayedi's claim that he should recover the $100,000 capital contribution, the trial court stated that it "[didn't] find any evidence . . . that those funds were used for anything other [than] the benefit and maintenance of the corporation and specifically the running of Shiraz Café." The trial court explained that, while there was "[c]ertainly lots of innuendo," there was no evidence presented that any of the funds were used for Arabghani's personal benefit.

After a discussion was held off the record, the trial court noted that it was "uncontradicted" that the funds were used for the benefit of Shiraz Café, specifically, "to do the build out" and "to buy the tables, the furniture, the plates, all of the things necessary to start a business." The trial court pointed out that, to prove Arabghani received a personal benefit would have required "an exercise in tracing." The trial court indicated that Moayedi should have asked for documents from Arabghani to trace the funds and to prove that Arabghani personally benefitted from them. Moayedi responded that he had asked for the documents from Arabghani but that Arabghani refused to give them to him. The trial court replied, "And nobody came to the Court and said, Judge, compel this."

Moayedi pointed out that he had testified that he did not believe that the restaurant's build-out cost $100,000, and he emphasized that he had asked Arabghani "to produce documents to explain what happened to the money." The trial court acknowledged that it had signed a temporary injunction ordering Arabghani to disclose financial information to Moayedi, but the court noted that "the first time that anybody's brought up this failure to comply with the Court's temporary injunction order is today . . . at trial."

Moayedi pointed to evidence showing that Arabghani had taken tips belonging to the restaurant's employees and that he had not fully compensated them for their work. However, the trial court again rejected the suggestion that such evidence showed that Arabghani had used the $100,000 for his own personal benefit:

> [A]t the end of the day what I have to base my decision on today, outside of surmise, suspicion, innuendo, circumstantial evidence related to the way other employees may have been treated, I don't have anything before this Court that would suggest or give me—give any evidentiary basis for the fact that the defendant absconded with the hundred thousand dollars and didn't use it on the company.

The trial court then asked, even if it found in favor of Moayedi, how would it assess "what amount was used on the company" and what amount was used for Arabghani's personal benefit? It noted that it "[didn't] have anything . . . to draw that distinction." The trial court concluded, "[T]his [was] a situation where . . . people invested into a business and the business was unsuccessful. And that's— that's what we have."

On November 30, 2021, the trial court signed its final judgment. In the judgment, the trial court found Arabghani liable to Moayedi based on breach of contract. For Arabghani's breach of contract, the court awarded Moayedi (1) $2,000, "which represent[ed] the unpaid balance of the [personal] loan" and (2) $12,500 in attorney's fees. The trial court ordered that Moayedi recover $6,185.44 from Shiraz Café, "represent[ing] the sales tax paid by Massoud Moayedi." The trial court also ordered that "all other relief not specifically granted" was denied, resulting in an implied take-nothing judgment on Moayedi's remaining claims.

On December 8, 2021, Moayedi requested findings of fact and conclusions of law. He filed proposed findings later that month. But, when the trial court did not file its findings, Moayedi did not file a notice of past due findings.

Moayedi now appeals the trial court's judgment.

## Factual Sufficiency

Relevant to Moayedi's appeal, the trial court's judgment amounted to a take-nothing judgment on

- Moayedi's breach-of-contract claim alleging that Arabghani breached the operating agreement's terms requiring Arabghani to deposit the $100,000 capital contribution and other corporate funds into a corporate bank account and requiring Arabghani to give Moayedi access to the company's funds and financial records;

- Moayedi's breach of fiduciary duty claim alleging that Arabghani breached his fiduciary duty by refusing to give Moayedi access to Shiraz Café's financial records and funds and by using the company's funds for his personal benefit;

13

- Moayedi's conversion claim alleging that Arabghani converted the $100,000 capital contribution and the restaurant's income; and

- Moayedi's assault claim alleging that Arabghani slapped Moayedi in the face breaking his eyeglasses.

In five issues,[3] Moayedi asserts that the trial court erred in rejecting these four causes of action as a basis for him to recover damages against Arabghani.[4] Moayedi contends that the trial court's determination that he should not recover based on these causes of action was "against the greater weight and preponderance of the evidence," which we construe as a challenge to the factual sufficiency of the evidence. *See Fischer v. Wells*, No. 04-06-00131-CV, 2007 WL 247673, at \*2 (Tex. App.—San Antonio Jan. 31, 2007, no pet.) (mem. op.) (construing argument that judgment was "against the greater weight of the evidence" as factual sufficiency challenge).

## A.    Standard of Review

Moayedi timely requested findings and conclusions, *see* TEX. R. CIV. P. 296, but he did not file a notice of past-due findings and conclusions, *see* TEX. R. CIV. P. 297. When, as here, the trial court does not file findings of fact and conclusions of

---

[3]    We note that the issues contained in the "Issues Presented" section of Moayedi's brief do not exactly match the issues identified in the main headings in the body of his brief. To ascertain the issues and arguments raised by Moayedi, we construe his brief broadly reading all parts together.

[4]    Moayedi does not challenge the trial court's take-nothing judgment on his fraud and tortious interference claims.

law after a bench trial, we imply all fact findings necessary to support the judgment.[5] *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). If the reporter's record is filed on appeal, as it was here, implied findings may be challenged on factual insufficiency grounds in the same manner as jury findings or a trial court's express findings of fact. *See id.*

When a party challenges the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We consider and weigh all of the evidence, and we "can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*

In a bench trial, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Zenner v. Lone Star Striping & Paving L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet.

---

[5] As noted above, the trial court stated its reasons on the record for determining that Moayedi had not shown that Arabghani was liable to him for the claims related to the $100,000 capital contribution. However, we are mindful that an appellate court cannot rely on comments that the trial judge makes from the bench as a substitute for findings of fact and conclusions of law. *See In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984); *Ifiesimama v. Haile*, 522 S.W.3d 675, 684 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A trial court's oral statements at trial are not findings of fact or conclusions of law.").

denied). In resolving factual disputes, the trial court may choose to believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *Id.*

**B.      Breach of Contract**

In his first issue, Moayedi contends that the trial court's take-nothing judgment on his claim that Arabghani breached the operating agreement was against the great weight and preponderance of the evidence. He asserts that the evidence showed that Arabghani violated the agreement's terms by not depositing the $100,000 capital contribution or other corporate funds into a corporate account and by refusing to give him access to the corporation's funds and financial records.

The elements of a breach-of-contract claim are (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). To recover compensatory damages for a breach of contract, a plaintiff must prove that he suffered some pecuniary loss as a result of the breach. *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). A party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or

conjectural. *Id.* "Thus, the absence of a causal connection between the alleged breach and the damages sought will preclude recovery." *Id.*; *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 215 (Tex. App.—El Paso 2010, pet. denied) ("The plaintiff must show that it suffered a monetary injury, as the result of the defendant's breach.").

Here, the evidence showed that Moayedi, Sadri, and Arabghani entered into an operating agreement for Shiraz Café for the purpose of opening a restaurant. Moayedi and Sabari agreed to make a capital contributions to fund the restaurant, and Arabghani agreed to contribute his time and labor in managing the restaurant. The parties agreed that each would receive his pro rata share of the restaurant's profits each month. Under the terms of the agreement, Arabghani agreed to deposit the capital contribution and the restaurant's income into a corporate bank account, and he agreed that Moayedi, as Shiraz Café's treasurer, had the right to access Shiraz Café's funds and financial information. Thus, Moayedi correctly asserts that the evidence showed that Arabghani breached the operating agreement by failing to deposit the $100,000 capital contribution and the restaurant's income into a corporate bank account and by failing to give Moayedi access to the corporation's funds and financial records. But, to recover for breach of the operating agreement, Moayedi was required to show that he suffered damages as a result of the breach. *See S. Elec. Servs.*, 355 S.W.3d at 324.

17

The ultimate goal in measuring damages for a breach of contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *See Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). "The normal measure of damages in a breach-of-contract case is the expectancy or benefit-of-the-bargain measure." *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The purpose of this measure of damages is to restore the injured party to the economic position he would have occupied had the contract been performed. *Id.*

Here, there was an absence of evidence demonstrating that Arabghani's breach of the operating agreement resulted in Moayedi incurring damages. Moayedi failed to offer any evidence showing what economic position he would have occupied had Arabghani not breached the operating agreement. Without evidence showing that the breach made his economic position worse or that performance of the agreement would have made his position better, Moayedi failed to meet his burden to show that Arabghani's breach of the operating agreement resulted in a pecuniary loss to him. *See Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 148 (Tex. App.—Dallas 2012, no pet.) ("To restore an injured party to the position he would have been in had the contract been performed, it must be determined what additions

to the injured party's wealth have been prevented by the breach and what subtractions from his wealth have been caused by it.").

Moayedi asked the trial court to award him damages of $100,000, corresponding to the capital contribution made by him and Sadri, who assigned his interest to Moayedi. But Moayedi offered no evidence to show that the parties had agreed that Moayedi and Sadri would recoup their capital contributions; rather, the parties agreed that they would each receive a pro rata share of the restaurant's profits. Moayedi attempted to link Arabghani's conduct constituting the breach of the agreement with the restaurant's inability to make a profit by arguing that the conduct facilitated Arabghani's use of Shiraz Café's funds—both the capital contribution and the restaurant's income—for his own personal benefit. But, as the trial court noted at the end of trial, Moayedi offered no proof that Arabghani used the corporate funds for his own personal benefit rather than for the benefit of corporation. Moayedi's testimony that he believed that the build-out and other expenses associated with opening the restaurant did not exhaust the corporate funds was speculative and conclusory. In contrast, Arabghani detailed in his testimony how he used the corporate funds to pay expenses associated with opening and operating the restaurant. The evidence showed that the build-out for the restaurant was completed and the restaurant opened and operated for several months, corroborating

Arabghani's testimony that he used the capital contribution for the benefit of the corporation.

On appeal, Moayedi asserts that the trial court imposed "an improper burden of proof" by requiring him to prove how Arabghani used the funds rather than requiring Arabghani to prove how the funds were used. Moayedi argues that it was "unfair" for him to have the burden of proof because Arabghani failed to comply with the temporary injunction requiring him to give Moayedi access to the corporation's records and financial information and failed to comply with Moayedi's written discovery requests also asking for disclosure of the information. He asserts that, without the corporate records and financial information, the trial court placed "an impossible burden of proof" on him to prove that Arabghani used the corporate funds for his personal benefit. However, the record reflects that Moayedi never sought to enforce either the temporary injunction or his right to obtain discovery responses from Arabghani.

Courts possess the inherent power to enforce their own orders through contempt proceedings. *See In re Gabbai*, 968 S.W.2d 929, 931 (Tex. 1998). This includes the power to hold a party in contempt for violating a temporary injunction issued by the court. *See New Penn Fin. LLC v. Salvagio*, No. 09-19-00157-CV, 2021 WL 1306390, at *4 (Tex. App.—Beaumont Apr. 8, 2021, no pet.) (mem. op.). Thus,

20

Moayedi could have requested the trial court to enforce the temporary injunction but failed to do so.

Similarly, to enforce compliance with his discovery requests, Moayedi could have filed a motion to compel or a motion for sanctions but he did not. *See* TEX. R. CIV. P. 215.1 (providing that party may apply for sanctions or order compelling discovery), 215.2(b)(3), (4) (discussing sanctions by court in which action is pending). The Supreme Court of Texas has held that "the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct." *Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993). By analogy, Moayedi's failure to seek out and obtain a pretrial ruling on his discovery dispute with Arabghani and his failure to seek enforcement of the temporary injunction precludes his argument that the trial court erred by not shifting the burden of proof from him to Arabghani based on Arabghani's failure to comply with either Moayedi's discovery requests or the temporary injunction. *See id.*

We conclude that the trial court's implied finding that Moayedi did not sustain damages as a result of Arabghani's breach of the operating agreement was not against the great weight and preponderance of the evidence. We hold that the evidence was factually sufficient to support the trial court's take-nothing judgment on Moayedi's breach of contract claim.

21

We overrule Moayedi's first issue.

## C.  Breach of Fiduciary Duty

In his second and third issues, Moayedi contends that the evidence was factually insufficient to support the trial court's take-nothing judgment for his breach-of-fiduciary-duty claim. To prevail on a breach-of-fiduciary-duty claim, a plaintiff must show (1) a fiduciary relationship between the plaintiff and the defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *Spradley v. Michael E. Orsak, LP*, No. 01-19-00186-CV, 2020 WL 7349490, at *8 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet.) (mem. op.); *Priddy v. Rawson*, 282 S.W.3d 588, 599 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

Moayedi asserts that a fiduciary relationship existed between him and Arabghani "by virtue of the operating agreement," and he contends that Arabghani breached his fiduciary duty by refusing to give Moayedi access to the corporation's records, taking possession of the capital contributions and the restaurant's revenue, and placing the funds into accounts not accessible to Moayedi.

Even assuming for purposes of argument that Arabghani owed Moayedi a fiduciary duty and that Arabghani breached that duty, an implied finding by the trial court that the breach did not cause an injury to Moayedi or benefit Arabghani was not against the great weight and preponderance of the evidence. Moayedi's

22

complaint that the trial court placed "an impossible burden" on him to prove how Arabghani used the corporation's funds serves as an acknowledgement that Moayedi did not provide evidence proving that Arabghani used the money for his own personal benefit rather than for the benefit of Shiraz Café. And, as discussed, Arabghani provided testimony describing how he used the funds for the opening and the operation of the restaurant. The testimony is consistent with other evidence showing that Arabghani prepared the restaurant for opening and operated it for several months.

Moayedi likens this case to *Flanary v. Mills*, a case in which Flanary was held liable to his business partner, Mills, for breach of fiduciary duty. 150 S.W.3d 785, 790, 793 (Tex. App.—Austin 2004, pet. denied). There, the evidence showed that Flanary had taken "thousands of dollars" of their company's funds to pay for his own personal expenses such as "medical expenses, traffic tickets, hunting and fishing licenses, boat expenses, equipment purchases, vehicle maintenance, and home utilities." *Id*. While many of the allegations are similar to those made in this case, the outcome in *Flanary* was different. Unlike here, Mills offered evidence proving that Flanary's breach of his fiduciary duty benefitted Flanary and harmed Mills. *Id.* at 793. Instead of supporting Moayedi's challenge to the trial court's rejection of his breach-of-fiduciary-duty claim, *Flanary* highlights the lack of evidence offered by Moayedi to prove that Arabghani used the corporation's funds

for his personal benefit. *Cf. id. Flanary* also supports our conclusion that the trial court's implied finding—that Arabghani's alleged breach of fiduciary duty did not cause an injury to Moayedi or benefit Arabghani—was not against the great weight and preponderance of the evidence. We hold that the evidence was factually sufficient to support the take-nothing judgment on Moayedi's breach-of-fiduciary-duty claim.

We overrule Moayedi's second and third issues.

## D.    Conversion

We construe Moayedi's fourth issue to challenge the factual sufficiency of the evidence to support the trial court's take-nothing judgment for his conversion claim.

The elements of a conversion claim are (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 363 (Tex. App.—Houston [1st Dist.] 2018, no pet.). To recover for conversion, a plaintiff must also prove damages that are the proximate result of the defendant's conversion. *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 685 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

24

Like his breach-of-contract and breach-of-fiduciary duty claims, Moayedi's request for damages for his conversion claim turned on his allegation that Arabghani used the capital contribution and the restaurant's income for his personal benefit. And, like those claims, we conclude that the trial court's implied finding that Moayedi did not sustain damages as a proximate result of Arabghani's alleged conversion of the corporation's funds was not against the great weight and preponderance of the evidence. As discussed, Moayedi offered no evidence to show that Arabghani used the corporate funds for his own benefit while other evidence showed that Arabghani used the funds for the benefit of Shiraz Café. Accordingly, we conclude that the evidence was factually sufficient to support the trial court's take-nothing judgment on Moayedi's conversion claim.

We overrule Moayedi's fourth issue.

## E. Assault

In his fifth issue, Moayedi challenges the factual sufficiency of the trial court's take-nothing judgment on his assault claim. The entirety of Moayedi's argument on this point is as follows:

> It is undisputed that [Arabghani] became violent and slapped Massoud Moayedi in the face. The only provocation for the assault was the exercise of his duties to examine the affairs of the business—at a time when the staff and rent were being left unpaid. [Arabghani] broke Massoud Moayedi's glasses. The record evidence was uncontroverted. The assault was witnessed by an employee of the restaurant.[6] The trial

---

[6] At trial, no employee testified that he or she saw Arabghani slap Moayedi.

25

court's failure to find any damages for the assault was against the greater weight and preponderance of the evidence.

Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "The failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal." *Banakar v. Krause*, No. 01-21-00609-CV, 2023 WL 2655743, at \*9 (Tex. App.—Houston [1st Dist.] Mar. 28, 2023, no pet.) (mem. op.). Here, Moayedi fails to cite any legal authority addressing assault and its elements and does not provide citation to the record in that portion of his brief. Moayedi "may not obtain appellate review of [his fifth issue] by making bare assertions of error and failing to provide legal authority supporting his complaint." *Id.*; *see* TEX. R. APP. P. 38.1(i); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.) ("And, just as importantly, existing legal authority applicable to the facts and the questions we are called on to answer must be accurately cited. . . . If we are not provided with existing legal authority that can be applied to the facts of the case, the brief fails.").

Even if we were to ignore Moayedi's briefing deficiencies, Moayedi's challenge, as argued, would nonetheless fail. Moayedi asserts that it was "undisputed" and "uncontroverted" that Arabghani struck him in the face and broke his eyeglasses. However, the assertion does not accurately reflect the record. During

26

cross-examination, Arabghani denied hitting Moayedi. We are mindful that, as the sole judge of the witnesses' credibility and the weight to be given to their testimony, the trial court was entitled to believe Arabghani and to disbelieve Moayedi, thereby providing a factually-sufficient basis to reject the assault claim. *See Zenner*, 371 S.W.3d at 314.

We overrule Moayedi's fifth issue.

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.